ALTENBERND, Judge,
Concurring.
I fully concur in Judge Wallace’s thoughtful decision. I write only to note that the “no new law violation” task in a case plan seems to be a response to the supreme court’s decision in B.C. v. Florida *1235 Department of Children & Families, 887 So.2d 1046 (Fla.2004). With all due respect to the supreme court, I believe the analysis in B.C. is unlikely to reflect the intent of the legislature and that the legislature should revisit section 39.806(1)(d)(1), Florida Statutes (2010), to determine whether it should clarify the statute.
Section 39.806(1)(d)(1) allows a termination when a parent is “expected to be incarcerated” for “a substantial portion of the period of time before the child will attain the age of 18 years.” In B.C., the supreme court relied purely on a linear mathematical formula to determine whether the percentage of the child’s minority was substantial. 887 So.2d at 1054. It is quite obvious to anyone who has watched a child’s mind develop that child development is not a matter of linear mathematics. In this case, the children have not seen the Father since July 2009, when he was out of prison for a few months and they were five years old, three years old, and one year old, respectively. Assuming that he is control released in 2012, the children will be 8⅜ and 4. They will have lived in a foster home for essentially their entire lives. Especially for the two older children, I find it hard to accept from the perspective of child development that the Father will not have been incarcerated for a “substantial portion” of their childhood by 2012.
This case is perhaps the worst case scenario because there is no mother on the outside waiting patiently for the Father’s release from prison. She is serving a longer prison sentence and has had the wisdom to allow these children to be placed for adoption in a permanent home. I recognize that the termination of a parent’s rights to a child implicates a fundamental liberty interest of the parent under existing case law, but it seems to me that, at some point, children ought to have a fundamental right to a safe, secure, and permanent home. In this case, there is little question that we are providing the Father with his constitutional rights at the expense of the children. An improved statute might allow us to avoid such outcomes in the future.